1:26-mj-02120-EA to 1:26-mj-02121-EA
✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED
4:37 pm, Sep 22 2026
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY JK Deputy

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN THE MATTER OF A SEARCH WARRANT AUTHORIZING A DNA SAMPLE COLLECTION FROM NATHANIEL SANTIAGO** | **Case No.** 1:26-mj-02120-EA |
| **IN THE MATTER OF THE SEARCH OF FOUR CELLPHONES CURRENTLY IN LAW ENFORCEMENT'S CUSTODY IN BALTIMORE, MD** | **Case No.** 1:26-mj-02121-EA |

**AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS**

I, Special Agent ("SA") Anthony Petrella with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

**INTRODUCTION**

1. The ATF, the Maryland Department of Transportation Authority ("MDTA") Police, and the Baltimore Police Department ("BPD"), have been investigating Nathaniel SANTIAGO for violations of 18 U.S.C. § 922(g)(1) (possession of a firearm and ammunition by a prohibited person), 21 U.S.C. § 841(a) (possession with intent to distribute controlled dangerous substances), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) on both April 15, 2026 and May 26, 2026 (collectively the "**SUBJECT OFFENSES**").

2. Pursuant to Federal Rule of Criminal Procedure, I submit this affidavit in support of an application for two search warrants:

a. The first warrant would authorize agents to obtain samples of DNA for comparison purposes in the form of saliva from SANTIAGO, a man born in 1996, assigned an FBI number ending in 8AE3, and as depicted in Attachment A-1.

1:26-mj-02120-EA to 1:26-mj-02121-EA

SANTIAGO is incarcerated at the Central Booking and Intake Facility located at 300 East Madison Street, Baltimore, Maryland 21202. The warrant would authorize members of the ATF, or their authorized representatives to obtain DNA contained within saliva samples from SANTIAGO, as described in Attachment B-1.

b. The second warrant would authorize the search of four cellphones ("**TARGET TELEPHONES**"), believed to belong to SANTIAGO, identified below and further described in Attachment A-2, which are currently in the custody of the ATF or BPD in Baltimore, MD, for evidence that is further described in Attachment B-2:

i. A black Apple iPhone inside of a clear case ("**TARGET TELEPHONE 1**");

ii. A black Nokia flip phone with IMEI number 353340633396141 ("**TARGET TELEPHONE 2**");

iii. A black Nokia flip phone with IMEI number 353340633437085 ("**TARGET TELEPHONE 3**");

iv. A damaged black Apple iPhone ("**TARGET TELEPHONE 4**").

3. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe that on April 15 and May 26, 2026, SANTIAGO committed the **SUBJECT OFFENSES**.

4. This affidavit is being submitted for the limited purpose of securing the requested warrants. I have not included details of every aspect of this investigation to date. Rather, I have set forth only those facts that I believe are necessary to establish probable cause supporting the warrant. I have not, however, intentionally omitted information that would tend to defeat a determination of probable cause.

## AFFIANT BACKGROUND

5. I am an investigative or law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C)—that is, a government agent who is engaged in enforcing criminal laws and is within a category of officers authorized to request a warrant.

6. I have been an SA with the ATF since 2020, and I am currently assigned to the ATF Baltimore Field Division, Group III. I attended the Department of Homeland Security's Criminal Investigator Training Program and the ATF's Special Agent Basic Training. I served as a police officer with the Supreme Court of the United States Police Department in Washington, D.C. for approximately six years prior to working for ATF.

7. I have conducted and participated in numerous investigations concerning the illegal possession and trafficking of firearms and controlled substances, and the commission of violent crimes by organized gangs. I received specialized training and personally participated in various types of investigative activities, including but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge of firearms and controlled substance laws; (c) code words and phrases used by criminals when referencing firearms and narcotics; (d) undercover operations; (e) the execution of search warrants; (f) the consensual monitoring and recording of conversations; (g) electronic surveillance through the use of pen registers and trap and trace devices; (h) the handling and maintenance of evidence; and (i) Title III investigations.

8. Through my training and experience, I have become familiar with the way narcotics traffickers use violence to further and protect their enterprise. I am familiar with the manners in

1:26-mj-02120-EA to 1:26-mj-02121-EA

which illegal drugs are transported, stored, and distributed; the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the way narcotics traffickers store and conceal the proceeds of their illegal activities.

9. Based upon my training and experience, and my participation in this and other drug trafficking investigations, I know the following about the way drug traffickers use cellular telephones and other electronic devices:

a. They often use cellular telephones and other electronic devices, to communicate with customers and/or co-conspirators via voice calls, text messages, and FaceTime calls. These communications are often stored on drug traffickers' cellular telephones and other electronic devices;

b. They often use multiple cellular telephones, and other electronic devices, including individual contacts used for particular customers or co-conspirators;

c. They often carry firearms to protect themselves and their drug proceeds and to enforce drug debts;

d. They often use the digital cameras on their cellular telephones to take pictures of themselves with their co-conspirators, holding handguns or other weapons, or handling controlled substances or proceeds. These pictures are often stored on a cellular telephone; and

e. They often keep logs of drug debts owed by customers or to suppliers, often referred to as an "owe sheet" or "tally sheet". These logs can be kept on cellular telephones. Additionally, drug traffickers may attempt to launder drug proceeds by intermingling them with legitimate funds, evidence of which may be stored electronically on cellular telephones and other electronic devices.

10. I know based on my training and experience that Deoxyribonucleic Acid ("DNA") can be found on items such as clothing, firearms, and vehicles and can be compared to a sample of DNA from a known person. This comparison can help identify or eliminate suspects. I know

1:26-mj-02120-EA to 1:26-mj-02121-EA

that Forensics Biology labs will not test evidence for the presence of DNA (or do any subsequent comparison) without a standard to which it can be compared.

## PROBABLE CAUSE

### A. April 15, 2026 MDTA Police Traffic Stop

11. On April 15, 2026, at approximately 3:11 p.m., an MDTA police officer conducted a traffic stop on a grey Infinity vehicle (VA: X65969) at 5198 Campbell Blvd., Nottingham, MD 21236 after he observed the driver throw trash from the vehicle. The officer approached the vehicle and identified Nathaniel SANTIAGO as the driver and S.G. as the front passenger. During the stop, SANTIAGO was asked to exit the vehicle to retrieve registration documents from the trunk. The officer also asked SANTIAGO if there were firearms inside the vehicle. Based on SANTIAGO's behavior and his response to the firearms question, the officer attempted to place him in handcuffs. As he attempted to do this, SANTIAGO fled the area on foot and was not immediately apprehended.

12. The officer remained with the vehicle, detained S.G., looked inside the driver's side area, and observed a handgun on the driver's side floorboard. The officer subsequently recovered a loaded Heckler & Koch, model VP9 SK, 9mm handgun, bearing serial number 232023132. The officer searched the rest of the vehicle and recovered a clear plastic bag containing an off-white rock substance weighing approximately 11 grams, which later tested positive for cocaine, and a pill bottle containing 47 multi-colored whole and partial tablets with various shapes and imprints, which later tested positive for Methamphetamine, from the driver's side door compartment. The officer also recovered a digital scale and multiple empty clear plastic bags from the center console of the vehicle.

13. The officer also recovered **TARGET TELEPHONE 1** on the driver's seat and **TARGET TELEPHONE 2** wedged between the driver's seat and the center console.

**B. May 26, 2026 BPD Arrest of SANTIAGO**

14. On May 26, 2026, at approximately 7:30 p.m., a BPD officer was conducting surveillance in the 6600 block of Graceland Avenue, Baltimore, MD 21224, when he observed SANTIAGO on a bicycle engage in what they believed was a hand-to-hand drug transaction. Specifically, the officer observed SANTIAGO approach a gold Jeep vehicle that entered the block, manipulate an item in his hands, and reach into the passenger's side front window of the vehicle. The Jeep then left the area, and the officer observed SANTIAGO holding what he believed to be U.S. Currency. The officer also observed SANTIAGO place a plastic baggie, containing suspected narcotics, inside a rubber glove and then into a green cloth bag that was hanging from the bicycle.

15. At approximately 7:45 p.m., BPD officers located the Jeep vehicle at the intersection of Graceland Avenue and Fait Avenue and conducted a traffic stop. Officers met with the driver, R.U., and asked for the purchased narcotics. The driver, R.U. then provided to the officers approximately .2 grams of a loose rock substance, which later tested positive for cocaine.

16. At approximately 7:53 p.m., officers traveled to the 6600 block of Graceland Avenue to arrest SANTIAGO. The officers observed SANTIAGO on a bicycle, carrying a green cloth bag. As the officers approached, SANTIAGO dismounted his bicycle and fled on foot. Officers pursued SANTIAGO on foot as he ran across the front deck of the Playbook Sports Bar & Lounge located at 6700 German Hill Road. The officers pursued SANTIAGO, and an officer heard the sound of a metal object hitting the ground. As officers arrested SANTIAGO, they heard him shout out to an unknown male, "Hey cuz get the gun cuz" and "grab that bitch yo". Eventually,

after a struggle, officers arrested SANTIAGO and recovered a loaded Smith & Wesson, model M&P9 Shield, 9mm pistol bearing serial number HNJ0323 on the ground where the sound was heard.

17. Officers conducted a search of SANTIAGO and recovered a baggie containing a rock substance weighing approximately 1.6 grams and one baggie containing a powder substance weighing approximately 4.1 grams, which both later tested positive for cocaine. Officers recovered **TARGET TELEPHONE 3** from the front deck of the Playbook Sports Bar & Lounge and **TARGET TELEPHONE 4** on the ground near the firearm.

18. While arresting SANTIAGO, an officer observed a male, later identified as D.W., pick up SANTIAGO's bicycle with the green cloth bag and leave the area. The officer observed D.W. travel along a dirt path behind the 1100 block of Steelton Avenue and then reappear onto the 6300 block of Boston Street. Officers then arrested D.W. in the 6400 block of Boston Street, but discovered the green cloth bag was missing. Officers searched in the rear of the 1100 block of Steelton Avenue and located the green cloth bag.

19. Officers searched the bag and recovered a clear plastic baggie containing a powder substance weighing approximately 12.1 grams. That substance tested positive for cocaine. Officers also recovered from the green cloth bag a clear zip baggie containing one pink pill, which tested positive for oxycodone; a zip baggie containing suspected marijuana; an electric scale with residue; and a plastic baggie containing twenty 9mm rounds of ammunition.

20. I reviewed SANTIAGO's criminal record. On June 2, 2016, he was convicted of possessing a firearm during a drug trafficking crime in the Circuit Court of Baltimore County.[1] He received a sentence of five years. Therefore, SANTIAGO is prohibited from possessing firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1) and should have known his status at the time he possessed the firearms on April 15 and May 26, 2026.

21. The MDTA Police and the BPD Firearms Lab test-fired the Hecker & Koch (recovered on April 15, 2026) and the Smith & Wesson (recovered on May 26) firearms respectively and determined that they could expel projectiles by the action of an explosive, and therefore, qualify as firearms under 18 U.S.C. § 921(a)(3). The firearms were not manufactured in Maryland and, therefore, affected interstate commerce prior to their recovery in Maryland on April 15 and May 26, 2026.

22. Investigators received a "Lead Notification" from the National Integrated Ballistics Information Network ("NIBIN").[2] The NIBIN lead indicated that the test-fires from the Smith & Wesson firearm recovered on May 26, 2026 possibly matched 9mm shell casings recovered from the scene of a May 10, 2026 firearm discharging in the 6200 block of Fortview Way, Baltimore,

---

[1] Case No. 03-K-15-005745.

[2] NIBIN identifies ballistic similarities between expended shell casings, which allows investigators to determine if a firearm used at the scene of a firearm-related offense has been used in the commission of other crimes. Specifically, NIBIN generates "Lead Notifications" which, based on my training, experience, and interaction with firearms examiners, are unconfirmed (presumptive) potential associations between two or more pieces of firearm ballistic evidence based on a correlation review of digital images in the NIBIN database. There is a high probability that a microscopic comparison by a firearms examiner will confirm the association between the firearm ballistic evidence.

MD, 21224[3] and 9mm shell casings recovered from the scene of a December 16, 2024 attempted homicide in the 1200 block of W. Baltimore Street, Baltimore, MD 21223.

23. Investigators note that the 6600 block of Graceland Avenue is only .7 miles away from the 6200 block of Fortview Way.

24. Investigators also note that the BPD issued a flier seeking to identify the shooter from the May 10, 2026 discharging. The flier includes a photo of an individual who appears to be SANTIAGO.

25. All of the circumstances surrounding the recoveries of the firearms, the pill bottle containing various shapes and sizes of methamphetamine, the presence of digital scales, multiple types of narcotics, and packaging materials, indicate that SANTIAGO possessed the firearms in furtherance of drug trafficking crimes.

26. ATF took possession of the **TARGET TELEPHONES 1** through **3** on July 28 and July 30, 2026. The BPD currently has possession of **TARGET TELEPHONE 4**. Neither the MDTA, the BPD, nor the ATF have been made aware of any attempts by SANTIAGO to recover the **TARGET TELEPHONES**.

27. Based on the facts above and my training and experience, I believe that the **TARGET TELEPHONES** belong to SANTIAGO and will contain evidence of the **SUBJECT OFFENSES**.

---

[3] In total, officers recovered 29 9mm shell casings from the 6200 block of Fortview Way.

## DNA AUTHORIZATION REQUEST

28. Based on my training and experience, I believe that SANTIAGO's DNA may be found on the Hecker & Koch firearm, which was recovered on April 15, 2026. The MDTA officer found the gun on the floor of the driver's side of the car that SANTIAGO drove. A known sample of his DNA is required in order to test and compare any and all DNA recovered. Accordingly, I am requesting authorization for a warrant to obtain samples of DNA for comparison purposes in the form of saliva from SANTIAGO to compare to the swabs taken from the firearm and magazine that I believe SANTIAGO possessed in violation of 18 U.S.C. § 922(g)(1).

29. Further, I respectfully request that the Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents, to obtain DNA samples from SANTIAGO so that the DNA sample may be compared to the swabs taken from evidence recovered in this case.

## FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATION DEVICES

30. Based on my training and experience, I know that electronic communications devices such as cellphones can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the **TARGET TELEPHONES** may still be stored on the devices, for various reasons, as discussed in the following paragraphs.

31. As further described in Attachment B-2, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes

described in the warrant, but also forensic evidence that establishes how the **TARGET TELEPHONES** were used, the purpose of its use, who used it, and when.

32. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET TELEPHONES** because data on the storage mediums can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage mediums that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the cellphone was in use.

33. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

34. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

35. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellphone is evidence may depend on other information

1:26-mj-02120-EA to 1:26-mj-02121-EA

stored on the cellphone and the application of knowledge about how a cellphone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

36. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. During this case and in numerous others involving the **SUBJECT OFFENSES**, investigators have learned that suspects rely heavily on electronic devices to facilitate these types of offenses. It is necessary to conduct a physical inspection of the **TARGET TELEPHONES** in order to obtain electronic communications and other information that might be stored on the **TARGET TELEPHONES** and to determine whether the **TARGET TELEPHONES** were the subject of wiretap, pen register, or other investigation detailed herein. In addition, the **TARGET TELEPHONES** may contain data and communications that were not electronically intercepted due to encryption or for other reasons.

38. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for would permit the examination of the **TARGET TELEPHONES** consistent with Attachment B-2. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

39. Again, the **TARGET TELEPHONES** remain in the custody of law enforcement, the known specifics of the device requested for authorization to search are detailed in Attachment

A-2, and the types of information expected to be recovered from the devices are listed in Attachment B-2.

40. Based on my knowledge, training, and experience, and the direct circumstances of this case, I believe that SANTIAGO may have used the **TARGET TELEPHONES** to communicate about the **SUBJECT OFFENSES** and other crimes related to this investigation. In my experience, the possessors of firearms and drug traffickers tend to keep and store communications and other information in their phones well after the completion of such crimes and continue to communicate through their electronic devices about their crimes after the crimes have been completed. Therefore, I believe that the **TARGET TELEPHONES** will contain evidence of SANTIAGO possessing, buying, selling, or trading firearms and distributing controlled dangerous substances. I believe that the **TARGET TELEPHONES** may provide additional evidence of these crimes and may still contain evidence that may be relevant to the investigation of the **SUBJECT OFFENSES**.

**AUTHORIZATION FOR SEARCH OF CELLPHONES**

41. There is probable cause to believe that evidence will be found from an analysis of the **TARGET TELEPHONES** that may contain the records of the most recent calls, which may include calls with persons involved in the **SUBJECT OFFENSES**. The **TARGET TELEPHONES** may contain copies of SMS or text or other electronic communications relating to activities associated with the **SUBJECT OFFENSES**. Also, the **TARGET TELEPHONES** may contain a variety of other electronic evidence, including electronic communications through various cellular or internet-based applications, photographs, and other information.

42. Wherefore, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the **TARGET TELEPHONES** and authorize the search of the items described in Attachment A-2, for the information set forth in Attachment B-2.

## CONCLUSION

43. Based on the information set forth in this affidavit, I respectfully submit probable cause exists to believe that the **TARGET TELEPHONES** and SANTIAGO's DNA will contain evidence of violations of federal law to include possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1); possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c).

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue search warrants, further described in Attachment A-1 and A-2, for the purpose of seizing the items particularly described in Attachment B-1 and B-2.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

ANTHONY PETRELLA

Digitally signed by ANTHONY PETRELLA
Date: 2026.08.07 09:13:58 -04'00'

Special Agent Anthony Petrella
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on August _7__, 2026.

The Honorable Erin Aslan
United States Magistrate Judge

# ATTACHMENT A-1

**Photograph of the Person to be Searched**

Nathaniel Augusto SANTIAGO
YOB: 1996
Currently residing at: Central Booking and Intake Facility, 300 E. Madison Street, Baltimore, MD 21202
Last four digits of FBI No.: 8AE3



# ATTACHMENT B-1

## Description of Items to be Seized

Buccal (oral) swabs of the inside of Nathaniel SANTIAGO's mouth limited to the extent where sufficient samples of DNA are obtained.

## ATTACHMENT A-2

### Property to be Searched

The following cellular devices believed to belong to Nathaniel SANTIAGO currently in the custody of the ATF Baltimore Field Division, located at 31 Hopkins Plaza, Suite 500, Baltimore, Maryland:

a. A black Apple iPhone inside of a clear case ("**TARGET TELEPHONE 1**");

b. A black Nokia flip phone with IMEI number 353340633396141 ("**TARGET TELEPHONE 2**"); and

c. A black Nokia flip phone with IMEI number 353340633437085 ("**TARGET TELEPHONE 3**").

The following cellular devices believed to belong to Nathaniel SANTIAGO currently in the custody of the Baltimore Police Department at 601 E. Fayette Street, Baltimore, MD 21202:

d. A damaged black Apple iPhone ("**TARGET TELEPHONE 4**").

Collectively, the four target telephones described above are the **TARGET TELEPHONES**.

## ATTACHMENT B-2

### Items to be Seized

All records contained in the item described in Attachment A-2 which constitute evidence of violations of 18 U.S.C § 922(g)(1) (possession of a firearm and ammunition by a prohibited person), 21 U.S.C § 841(a) (possession with intent to distribute controlled dangerous substances), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) committed by Nathaniel SANTIAGO and other unidentified subjects, including, but not limited to:

1. The list of contacts and their associated information, including telephone numbers and email addresses, on the **TARGET TELEPHONES**.

2. Call logs reflecting date and time of received calls.

3. Any and all digital images and videos of persons associated with this investigation.

4. Text messages to and from the **TARGET TELEPHONES** that refer or relate to the crimes under investigation.

5. Records of incoming and outgoing voice communications that refer or relate to the crimes under investigation.

6. Voicemails that refer or relate to the crimes under investigation.

7. Voice recordings that refer or relate to the crimes under investigation.

8. Data reflecting the phone's location between February 1, 2026 and May 26, 2026.

9. Data that refers or relates to the crimes under investigation from third-party applications (including social media applications like Facebook and Instagram and messaging programs like WhatsApp and Snapchat) between February 1, 2026 and May 26, 2026;

10. For the **TARGET TELEPHONES**:

a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. Evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. Evidence of the lack of such malicious software;

d. Evidence of the attachment to the **TARGET TELEPHONES** of other storage devices or similar containers for electronic evidence;

e. Evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;

f. Evidence of the times the **TARGET TELEPHONES** were used between February 1, 2026 and May 26, 2026;

g. Passwords, encryption keys, and other access devices that may be necessary to access the **TARGET TELEPHONES**;

h. Documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the **TARGET TELEPHONES**;

i. Contextual information necessary to understand the evidence described in this attachment.

With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

1. Surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

2. "Opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

3. "Scanning" storage areas to discover and possible recover recently deleted files;

4. “Scanning” storage areas for deliberately hidden files; or

5. Performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files, or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file, or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.